# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

VALERIE R. McCANN, Special Administrator )
    of the Estate of Patrick McCann, )
                Plaintiff, )    No. 11 CV 50125
v. )    Judge Iain D. Johnston
                         )
STEPHEN A. CULLINAN, M.D., *et al.*, )
              Defendants. )

## MEMORANDUM OPINION AND ORDER AND
## REPORT AND RECOMMENDATION

### SUMMARY OF RULINGS

Currently pending before the Court is a raft of motions:

- Plaintiff's motion for an extension of time. Dkt. 239. ("Motion to Extend");
- OSF Healthcare System's motion to bar expert witnesses, which was joined by all other defendants in the case. Dkts. 229, 232-35. ("Motion to Bar");
- Plaintiff's motion to voluntarily dismiss defendants OSF Healthcare System, Edward Pyun, Stathis Poulakidas, and Perryville Surgical Associates, S.C. ("Healthcare Defendants"). Dkt. 236. ("Motion for Voluntary Dismissal"); and
- The Healthcare Defendants' motion for summary judgment. Dkt. 261. ("Summary Judgment Motion").

For the reasons, below, the Court enters the following orders.

First, the Motion to Extend and the Motion to Bar are both granted, in part, and denied, in part. Plaintiff is not barred from using the identified expert witnesses. However, plaintiff may only use those expert witnesses if he pays the fees and costs identified in this order.

Second, it is the Court's Report and Recommendation that the Motion for Voluntary Dismissal be granted. The dismissal is without prejudice, but conditioned upon plaintiff's payment of all fees and costs incurred as of February 10, 2015, in defending this case, if the plaintiff refiles against any of the Healthcare

Defendants.  Plaintiff is given until July 29, 2015, to accept this condition.  If plaintiff fails to object to this condition, then the Court will assume that plaintiff accepts this condition under Rule 41.

Third, it is the Court's Report and Recommendation that the Summary Judgment Motion be denied as moot.

All objections to any aspect of this order must be filed by July 29, 2015.  The case is set for telephonic status on August 4, 2015 at 9:00 a.m.  By July 31, 2015, counsel shall provide telephone numbers for the status hearing to the Court's operations specialist, who will initiate the call.

## INTRODUCTION

This four-year old case has been problematic, and unnecessarily so for many reasons – most attributable to plaintiff's side.  The latest round of briefing has cost all parties substantial time and money, required the Court to hold multiple hearings and write this lengthy opinion, and caused other litigants, who were patiently complying with orders and deadlines, to have their matters delayed while the Court tends to the issues in this case.  These consequences were all caused by the failure of plaintiff (seemingly both plaintiff herself and her counsel) to meet explicit, but reasonable, deadlines.  The Court believes that one or more parties will file objections to this order; thereby leading to more delay, as well as additional expense in this case.  All this was avoidable.

Blowing deadlines is not unique to this case, unfortunately.  Counsel miss deadlines all too often.  On occasion, deadlines need to be adjusted for a variety of valid reasons, including, but not limited to, illness, mishaps, electronic discovery snags, true emergencies and the recalcitrance of non-party individuals and corporations.  But more often than not, deadlines are missed for frivolous reasons.  The Court routinely excuses the former, but not the later.  The Court even occasionally forgives calendaring errors, as those happen in life.  The Court understands.  But, frankly, the Court is shocked as to how cavalierly some members of the bar take deadlines.  These attorneys view court ordered deadlines as nothing more than mere suggestions, which, if the feeling strikes them, they can choose to accept – like a server's suggestion as to which dinner special to order at a restaurant.  When the Court enters a case management order under Federal Rule of Civil Procedure 16, it is not spit balling ideas around a conference room table.  Instead, the Court is entering dates (that, by the way, the parties had substantial input in determining) to help ensure the orderly proceeding of the matter within a very busy district court.  *See* Rule 16 1983 Advisory Committee Notes ("[A]t some point both the parties and pleadings will be fixed."); *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril).

An easy solution exists. Counsel must calendar and meet dates. And if counsel is going to miss a deadline, then counsel should file a motion seeking an extension *before* the deadline has passed. *See, e.g., Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir. 2012); *Johnson v. Gudmondsson*, 35 F.3d 1104, 1111 (7th Cir. 1994); *Ammons-Lewis v. Metropolitan Water Reclamation District*, 2012 U.S. Dist. LEXIS 170976, at *4-5 (N.D. Ill. Nov. 30, 2012) (filing before expiration of deadline entitles movant to proceed under more lenient standard of Rule 6(b)(1)(A)). Counsel is far more likely to receive the extension by seeking it before the expiration. 1 *Moore's Federal Practice*, §6.06[2], p. 6-32 (Matthew Bender 3. ed. 2013). Indeed, this concept is contained in the Federal Rules of Civil Procedure. *Compare* Fed. R. Civ. P. 6(b)(1)(A) *with* Fed. R. Civ. P. 6(b)(1)(B). The old adage that it is better to beg for forgiveness than to plead for permission was rejected by the Federal Rules of Civil Procedure. *Id.; see Gray v. U.S. Steel Corp.*, 2012 U.S. Dist. LEXIS 31834, at *11-12 (N.D. Ind. Mar. 9, 2012). Failure to follow this simple solution inevitably leads to additional delay, which is a scourge of modern civil litigation. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (7th Cir. 1990). It behooves litigants, counsel and courts to remember a purpose of the Federal Rules of Civil Procedure is to seek a speedy resolution. Fed. R. Civ. P. 1.

This solution should not be a shocking revelation. Indeed, attorneys should be and presumably are some of the brightest people. After all, they have at least one undergraduate and graduate degree and passed a bar examination. Somewhere along that journey, one would expect that the importance of meeting deadlines was instilled.

The Seventh Circuit has repeatedly warned counsel about the importance of meeting deadlines. *See, e.g., Spears v. City of Indianapolis*, 74 F.3d 153, 157-58 (7th Cir. 1996). And a cavalcade of court cases can be captured with a simple search on the subject. *See, e.g., Moore v. Pipefitters Ass'n*, 2014 U.S. Dist. LEXIS 83934, at *20-21 (N.D. Ill. June 20, 2014); *Loeffel Steel Prods. v. Delta Brands, Inc.*, 2013 U.S. Dist. LEXIS 169157, at *20-21 (N.D. Ill. Dec. 2, 2013), *Finwall v. City of Chicago*, 239 F.R.D. 494 (N.D. Ill. 2006).[1] According to the Seventh Circuit, "A good judge sets deadlines, and the judge has the right to assume that deadlines will be honored. The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines." *Spears*, 74 F.3d at 157. In fact, the Seventh Circuit has gone further. According to the Seventh Circuit, district courts are not only entitled to enforce deadlines, they must do so. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006). Of course, courts should not mindlessly enforce deadlines. *Wong v. Regents of the University of California*, 410 F.3d 1052, 1060 (9th Cir. 2005). The Seventh Circuit's admonitions are not theoretical. Setting and maintaining pretrial schedules is critical to the functioning of a court, and all the litigants that

---

[1] The Court freely admits to being somewhat partial to Magistrate Judge Cole's opinions on this subject.

use it. Kourlis & Singer, *Managing Toward the Goals of Rule 1*, 4 The Federal Courts Law Review 1, 8-12 (2009). Secondary sources echo the importance of meeting deadlines. *See, e.g.,* Schrier & Torres, *Before Midnight: Deadlines, Diligence, and the Practice of Law*, 68, The Federal Lawyer (December 2014).

The origin of the term "deadline" dates to the Civil War. As Chief Judge Edenfield of the Southern District of Georgia tells it, "The word 'deadline' was coined by Union soldiers held at the Andersonville prison camp during the War of Northern Aggression. Confederate guards summarily executed any prisoner crossing a preordained line on the camp grounds; thus, the term 'deadline.'" *Brown v. McCabe & Pietzsch, P.A.*, 180 B.R. 325, 326 n.1 (S.D. Ga. 1995). Missing deadlines can have similar consequences to a case. Federal courts are empowered and, at times, required to impose harsh sanctions when deadlines are missed. *See, e.g.,* Fed. R. Civ. P. 37 (requiring the exclusion of documents and witnesses that were not timely produced and identified absent substantial justification or harm).

## FACTS

This case involves the death of Patrick McCann. Mr. McCann suffered horrific burns while allegedly setting his mother's house ablaze after trying to strangle her. Mr. McCann was first treated at St. Anthony Medical Center, and then discharged and transported to the Ogle County Correctional Center, where he was administered methadone for pain and eventually died.

On September 9, 2014, this Court set deadlines for expert disclosures, including an October 14, 2014, deadline for any reports from expert witnesses retained by plaintiff. Dkt. 225. On the status call on September 9, 2014, plaintiff's counsel never mentioned any concerns about a lack of funds, difficulty with his client, sickness, busyness or anything else that would prevent him from meeting the October 14, 2014 deadline. Indeed, the exchange between the Court and plaintiff's counsel led the Court to believe that no problems were in the offing and that the deadline would be easily met. For example, counsel stated that he had consulted with several experts who were "ready to go." Likewise, counsel informed the Court that if he were given 30 days, he would have his reports ready. In response, the Court gave just over 30 days to provide a slight cushion, to which counsel responded "Great." At the very end of the status hearing, the Court gave all counsel – including plaintiff's counsel – the opportunity to add anything to the record or inform the Court of anything they thought the Court should know. Plaintiff's counsel informed the Court that he had "nothing to add." After establishing the deadlines, the Court announced that it was "very disinclined" to move any of the dates. Plaintiff's counsel said that he understood. At the conclusion of the status, the Court stated that it was available if any issues regarding the experts were to arise. In the October 14, 2014 order, the Court set the case over for a status

hearing on March 31, 2015, to allow the parties time to serve their reports and depose each other's experts.

The Court heard nothing about expert discovery until January 22, 2015 – six months later. At that time, defendant OSF Healthcare System filed a motion to bar plaintiff from disclosing expert witnesses (the "Motion to Bar") because none had been disclosed and the October 14, 2014, deadline had long-passed. Dkt. 229. Indeed, three months had passed without plaintiff serving retained expert reports. OSF Healthcare noticed the Motion to Bar for presentment on January 27, 2015, at 10:00 a.m., with electronic notice going to all parties, including plaintiff's counsel. This notice satisfied both Local Rule 5.3(b) regarding noticing motions for presentment, as well as the Court's standing order requiring three business days' notice. Dkt. 230. According to the Motion to Bar, plaintiff's counsel had e-mailed defense counsel on October 22, 2014, asking them to agree to an extension of the October 14, 2014, deadline to disclose plaintiff's experts. The space-time continuum establishes that the request occurred after the deadline had already passed. Dkt. 229 at 2. According to the e-mail, counsel needed the extension because of "many conflicts appear[ed] which . . . caused some delay" including "sickness followed by a difficult schedule." However, counsel stated that "[He] [had] all of [his] witnesses and retainer checks [were] going out [that] week." Dkt. 229 Ex. B. By the following day, all defense counsel had declined the request. Dkt. 229 Ex. C. Between October 22, 2014 and January 22, 2015, defense counsel – and more importantly, the Court – heard nothing from plaintiff's counsel. Dkt. 229 at 2.

The Court's standing order allows respondents to discovery motions to file written responses to motions before the matter is heard, but does not *require* a written response. Before the presentment of the motion, plaintiff did not file a written response.

On the morning of January 27, 2015, the date set for presentment of the Motion to Bar, plaintiff's counsel contacted the Court, asking to appear on the motion telephonically. Dkt. 241. The request was denied because, as all are advised by the Court's standing order, only status hearings are conducted telephonically and only by order of the Court. When the Motion to Bar was called as scheduled during the 10:00 a.m. motion call, plaintiff's counsel was not present. *Id.* Defense counsel reported that they had heard nothing from plaintiff's counsel. *Id.* Suspecting counsel was still en route, the Court passed the case and then recalled it at 10:57 a.m. Plaintiff's counsel was still not present. Given plaintiff's counsel's failure to appear to oppose the Motion to Bar, in the absence of any written response in opposition, the length of time that had passed since the deadline to disclose retained experts, and plaintiff's inaction after defense counsel opposed any extension, the Court entered a Report and Recommendation that the Motion to Bar be granted. *Id.* The deadline to object was February 11, 2015. *Id.*

Later the same day (January 27, 2015), plaintiff's counsel filed a motion to dismiss the Healthcare Defendants (the "Motion for Voluntary Dismissal"). Dkt. 236. According to this motion, plaintiff alleged only state law claims of medical negligence against those defendants that "should not be tried in this Federal Court." *Id.* at 3. Plaintiff's counsel sought dismissal without prejudice because "this state cause of action may be re-filed in State Court within the one year limitation period in Illinois for re-filing claims." *Id.* The Motion for Voluntary Dismissal was noticed for presentment on February 12, 2015.

The following day (January 28, 2015), after the Court had announced its decision on the Motion to Bar, but before the Report and Recommendation had issued, plaintiff's counsel filed a motion to extend the deadline to disclose expert witnesses (the "Motion to Extend"). Dkt. 239. According to this motion, plaintiff's counsel realized sometime in October 2014 that he would not meet the October 14, 2014, deadline to disclose experts. The Motion to Extend did not state when this realization occurred. However, the realization must have occurred sometime between October 1 and October 13, 2014. According to the Motion to Extend, plaintiff lacked funds to hire any retained experts until December 2014. *Id.* at 2-3. But three of the anticipated four experts had been paid; the fourth was checking for conflicts; and counsel anticipated receiving their reports by the presentment of the Motion to Extend. Like the Motion for Voluntary Dismissal, the Motion to Extend was also set for February 12, 2015. *Id.* at 3-5.

On February 12, 2015, all parties' counsel argued the Motion for Voluntary Dismissal and the Motion to Extend. Plaintiff's counsel argued that he sought to dismiss the medical defendants because his expert reports revealed that Mr. McCann had died from an overdose of methadone administered at the jail, not because he had been prematurely discharged from the hospital. Although the motion sought dismissal without prejudice, plaintiff's counsel stated "it is not my intention to refile this action." Dkt. 259 at 8:24-25. Counsel for the Healthcare Defendants sought either a dismissal with prejudice or a dismissal without prejudice, but with payment of fees and costs. *Id.* at 7:25-8:5.

As for the Motion to Extend, plaintiff's counsel expanded upon the reasons he gave earlier for missing the deadline. During the hearing, in addition to the lack of funds, counsel asserted that plaintiff and all family members are "suffering from some form of mental depression or mental deficiency," which made communication difficult, and counsel did not know whether he was still employed. Dkt. 259 at 18:15-16, 39:7-8. He also argued that defendants would suffer no prejudice because they already had the experts' names; counsel served three of the four anticipated expert reports that morning; and that fourth would be served within 14 days. *Id.* at 21:16-17, 23:16-18. Defense counsel argued that the Motion to Extend should be denied because plaintiff's counsel had not been diligent and that defendants would be prejudiced by even further delay. *See, e.g.*, *id.* at 31:1-16. They also noted that

although in the Motion to Extend plaintiff anticipated receiving reports from the four experts by the February 12, 2015, hearing, plaintiff had produced reports from only three experts, and only one of the reports disclosed the information required under Federal Rule of Civil Procedure 26(a)(2)(B)(i) – (vi). The Court took the matters under advisement until the next status hearing set for March 10, 2015. Dkt. 252.

In the meantime, District Judge Kapala ruled on the Report and Recommendation this Court had made on January 27, 2015, barring plaintiff's experts. Dkt. 253. In light of plaintiff counsel's absence from the January 27, 2015, hearing and the resulting lack of any adversarial exchange about the factors relevant to modifying scheduling orders and barring evidence as a sanction for discovery violations, Judge Kapala recommitted the outstanding motions to this Court for additional argument and/or briefing, and preparation of another Report and Recommendation. *Id.* at 2. Judge Kapala's order specifically referenced both Rule 16 and Rule 37. Dkt. 253, p. 2. The Court ordered additional briefing on the issues Judge Kapala raised. Dkt. 254. The Court explicitly asked the parties to address which Federal Rule of Civil Procedure applied: Rule 6, Rule 16 or Rule 37. The briefing is now complete.[2]

## ANALYSIS

### Motion to Extend and Motion to Bar

The two primary motions pending before the Court are the Motion to Extend and Motion to Bar. Dkts. 229, 232-35, 239. The Court will first address these motions together in the context of the various possible applicable rules.

#### Analytical Framework for this Order

Three possible rules relating to deadlines are at play here: Rule 6, Rule 16 and Rule 37. But the standards under each rule differ, possibly resulting in a different determination depending on which rule is applied. Like many questions in life, the starting point is often outcome determinative.[3] The parties have further complicated matters by switching the respective rule upon which they rely. In the Motion to Bar, defendants rely on Rule 37. Dkt. 229. However, after Judge Kapala recommitted the matter and after the Court's ordered briefing, defendants sought to rely on the stricter standard of Rule 16. Recording of May 12, 2015 Hearing.

---

[2] Plaintiff had still not produced all of the expert reports as of the filing of defendants' briefs, but the reports were attached to plaintiff's brief filed later that day. As a result, the Court does not yet know defendants' position on whether the reports now comply with Rule 26(a)(2)(B).

[3] *See, e.g.,* Everlast, *What It's Like* (1998 Tommy Boy Records) ("You know where it ends: Yo, it usually depends: On where you start.").

Similarly, plaintiff flipped positions.  In the Motion to Extend, plaintiff relied on Rule 16.  Dkt. 239.  But later plaintiff asserted the more forgiving standard of Rule 37 applied.  Recording of May 12, 2015 Hearing.  Adding to the analytical difficulty is that if the Court were to determine that Rule 16 applied and the Motion to Extend were denied, there would be no logical reason to address the Motion to Bar, as it would be moot.  But the Motion to Bar was filed before the Motion to Extend.  Additionally, Judge Kapala's order recommitted the matter to address, among other things, both Rule 16 and Rule 37.  Dkt. 253, p. 2.

And as noted above, the undersigned fully expects that at least one party will object to this order.  As a result, to prevent any further briefing before the undersigned, to fully address the issues that may come before Judge Kapala on an objection, and to save Judge Kapala from having to recommit the matter again, the undersigned will analyze the issue under each rule and then determine whether that rule applies.  The undersigned fully recognizes that this approach will result in a substantial amount of dicta, which is undesirable.  But the undersigned would rather fully address all issues, even with dicta, for Judge Kapala's benefit.

Burdens Imposed by the Rules

As mentioned, three different rules have possible application under these circumstances.  Wright, Miller & Steinman, 4B *Federal Practice & Procedure: Civil*, §1166, 682 (4th ed. 2013) ("Rule 6(b) is not the only provision in the Federal Rules of Civil Procedure that authorizes the extension of a stated time period.  As a result, questions inevitably arise as to the interrelationship between Rule 6(b) and the specific time extension provisions that appear elsewhere in the rules.").  But each rule uses different language and, as a result, to some extent, the case law has developed different standards.[4]

Federal Rule of Civil Procedure 6

Rule 6 is all about time, with Rule 6(b) addressing extensions of time.  Rule 6(b) provides the following:  "When an act may or must be done within a specified time, the court may, for good cause extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires, or . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b).

---

[4] As shown by the differing analyses below, this Court disagrees with the Ninth Circuit's view that the standards are substantially the same.  *Malone v. U.S. Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987) (standards governing dismissal for failure to obey a court order are basically the same under Rule 16, 37 and 41).  If the view were correct, then this order would have been substantially shorter and the Court would have saved much time.

Consequently, under Rule 6, when a party seeks an extension of time, the court may extend the time if good cause is shown. Fed. R. Civ. P. 6(b)(1). But Rule 6 differentiates between requests for extensions made *before* the time has expired and requests made *after* the time has expired. If the request is made before the time has expired, then only good cause must be shown. *Under Rule 6*, "good cause" is not a high standard. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) (good cause is a non-rigorous standard).[5]

In contrast, after the deadline has expired, Rule 6 permits an extension only on a showing of both good cause *and* excusable neglect. Fed. R. Civ. P. 6(b)(1)(B); *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 464 (7th Cir. 2005) (affirming district court's denial of motion for extension of discovery deadline filed one month after the deadline had passed). In determining whether excusable neglect exists, courts are guided by the factors the Supreme Court identified in *Pioneer Investment Services Co. v. Brunswick Associates, Ltd.*, 507 U.S. 380, 395 (1993): (1) the danger of prejudice to the non-movant, (2) the length of the delay and its impact on the judicial proceedings, (3) the reason for the delay (including whether the delay was within the control of the movant), and (4) the movant's good faith. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006) (applying *Pioneer* factors to Rule 6). These factors are not weighted equally: the reason for the delay is the most important factor. *Graphic Communications Int'l v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 6 (1st Cir. 2001) (citing *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)). Moreover, context matters in determining excusable neglect, including whether the movant was previously dilatory. *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 593-94 (7th Cir. 2012). The burden is on the movant to show excusable neglect. *In re Dahlgren Int'l, Inc.*, 147 B.R. 393, 406 (N.D. Tex. 1992) ("A tardy Rule 6(b) movant bears the burden of establishing excusable neglect."); *see also* 1 *Moore's Federal Practice*, §6.06[3][a], p. 6-33 (Matthew Bender 3d ed. 2013) ("the moving party must show good cause and demonstrate that the failure to act was the result of 'excusable neglect'"). Thus, the

---

[5] As shown later, as developed by case law, "good cause" under Rule 16 – as opposed to under Rule 6 – is a much higher standard. And as shown throughout this order, "good cause" under Rule 6(b)(1) is a very different standard compared to "good cause" under Rule 16(b)(4). Certainly, a well-recognized rule of construction holds that the same words in the same statute or rule should be given the same meaning. *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 584 (2007) (stating that there is a general presumption that identical words used in different parts of the same statute have the same meaning (citing *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)). However, the same words, when used in the same statute can be interpreted very differently. *See* Johnston, *Problems in Imposing Extended-Term Sentences Under Section 5-5-3.2(b)(2) of the Unified Code of Corrections*, 25 J. Marshall L. Rev. 491, 520 n. 207 (1992) ("Thus, the same statutory language, namely, 'exceptionally brutal or heinous behavior indicative of wanton cruelty,' means two different things depending on the punishment allowed by statute."); *see also Scott v. Fischer*, 616 F.3d 100, 105-07 (2d Cir. 2010) (distinguishing between "clearly established" for purposes of qualified immunity compared to habeas corpus).

movant's ability to obtain an extension after blowing a deadline is more onerous. *Ammons-Lewis*, 2012 U.S. Dist. LEXIS 170976, at *4-5 (filing before expiration of deadline entitles movant to proceed under more lenient standard of Rule 6(b)(1)(A)).

If this Court were to apply Rule 6, plaintiff would not prevail. She has not established excusable neglect under the factors set out in *Pioneer*, 507 U.S. at 395.

First, defendants would suffer some, but not substantial, prejudice. Granting an extension would create additional delay for defendants, who would be entitled to depose the experts and secure their own experts months later than originally contemplated by the Court's scheduling order. Consequently, there would be a delay in their ability to file summary judgment motions. The prejudice caused by further delay is greater here than in most cases. The Court already delayed summary judgment motions to allow plaintiff time to disclose liability experts by October 14, 2014. Even by that date, defendants were already "chomping at the bit" to file dispositive motions. Recording of September 9, 2014 Status Hearing. Nevertheless, they will ultimately be given that opportunity – albeit delayed somewhat.

Second, the length of delay – about three months – is significant. This Court has previously found significant a delay of two weeks, both because of the length and the cascading effect of such a delay on the Court's other business. *Postle v. Bath & Body Works, LLC*, No. 13 CV 50374, 2015 WL 521365, at *5 (N.D. Ill. Feb. 9, 2015) (noting other cases in which similar delays established a lack of diligence). This Court's decision in that case was based on established Seventh Circuit case law. *See, e.g., Keeton v. Morningstar, Inc.*, 667 F.3d 877 (7th Cir. 2012) (affirming denial of motion for leave to file summary judgment response *instanter* 20 days after it was due); *Raymond v. Ameritech Corp.*, 442 F.3d 600 (7th Cir. 2006); *Dean v. Chicago Transit Authority*, 2005 U.S. App. LEXIS 1510 (7th Cir. 2005) (affirming denial of motion for leave to file summary judgment response *instanter* two weeks after deadline).

Third, although counsel's proffered reasons for the delay have evolved, none are particularly compelling. For example, in his e-mail to defense counsel dated October 22, 2014, plaintiff's counsel attributed the delay to an unspecified "sickness" that complicated his already "difficult schedule." Dkt. 229 Ex. B. But busyness is not a valid excuse. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir. 2012); *Harrington v. Chicago*, 433 F.3d 542, 548 (7th Cir. 2006). Later counsel began citing plaintiff's lack of funds. Courts are split on whether lack of funds excuses a party's failure to comply with deadlines. *Compare Allen Russel Publishing, Inc. v. Levy*, 109 F.R.D. 315, 318 (N.D. Ill. 1985) (finding lack of funds to hire attorney good cause to vacate default judgment) *with Rinieri v. News Syndicate Co.*, 385 F.2d 818, 823 (2d Cir. 1967) ("If a party lacks funds it is not given to him to decide ex parte that he is justified in not prosecuting his suit and is thus free to

ignore the rules of the Courts."). But even if a lack of funds can support a finding of excusable neglect, the factor does not weigh heavily in plaintiff's favor because counsel's representations on the issue are inconsistent. In his supplemental brief, counsel states that he "began to realize that he was on a very tight budget as he had no funds" before he sent the October 22, 2014, e-mail to defense counsel. Dkt. 257 at p. 5. However, in the e-mail itself, he states that "retainer checks are going out this week." Dkt. 229 Ex. B. As stated above, plaintiff's counsel failed to inform the Court of a funding problem – or any other problem – just a month earlier when it set the October 14, 2014 deadline. In fact, plaintiff's counsel led the Court to believe that the deadline would easily be met because he had consulted with several experts who were "ready to go" and needed about three weeks to provide their reports. And, as mentioned, even if counsel lacked funds, he could and should have sought to extend the deadline to disclose experts *before* the deadline had passed, or certainly before defendants moved to bar plaintiff's experts three months later.

Turning to good faith, although plaintiff's counsel does not explicitly address this element of the excusable neglect analysis, he seems to touch upon it when he contends that he "did not immediately file a motion with this court because there were several complications that had arisen" including that he "did not know if he was discharged by Plaintiff," "did not possess the necessary funds," that he thought it more appropriate to wait until he had expert reports in hand before alerting the Court to his missed deadline, and that he "was placed in a no win situation and he acted as he thought appropriate." Dkt. 257 at p. 13. The Court acknowledges that there is no evidence counsel proceeded with ill-will or concealed funds to cause delay. But there is also no evidence of any good-faith attempt to address the complications he purportedly faced by alerting the Court or obtaining a timely extension. And again, there was no mention of any possible complications at the September 9, 2014 status hearing when the Court entered the October 14, 2014 deadline. Moreover, counsel did not even attend the hearing on defendants' Motion to Bar, which was the Court's first inkling of any difficulties with expert discovery.

Finally, the Court addresses context. Plaintiff's counsel has established a history of failing to comply with Court deadlines and orders. As noted, counsel missed both the disclosure deadline and the presentment of and hearing on the Motion to Bar. These missed dates and deadlines followed plaintiff's counsel's failure to appear for a status hearing scheduled on February 13, 2014. Dkt. 203. Furthermore, during the February 12, 2015, hearing on plaintiff's Motion to Extend, counsel stated that he had served three of four reports, and all reports would be filed within fourteen days or February 26, 2015. But as defense counsel reported at the hearing, two of the reports did not include the information required by Rule 26(a)(2)(B), and counsel did not produce all four reports by February 26, 2015, but rather they were attached to plaintiff's April 13, 2015 supplemental brief. Plaintiff also missed deadlines to respond to requests to admit, *see* Dkts. 225-26, and

plaintiff's counsel's efforts to obtain a guardianship for the decedent's brother has been protracted and incomplete. Dkt. 238.

These motions are even more disturbing when viewed in the context of the September 9, 2014 status hearing when the deadline was set. Plaintiff's counsel repeatedly led the Court to believe that the deadlines were extremely reasonable and could be easily met. But being cautious, the Court warned plaintiff's counsel that it was "very disinclined" to move any dates in a "2011 case," to which plaintiff's counsel responded, "I understand." This Court barks before it bites. Here, plaintiff's counsel heard the bark, but he chose to ignore it.

Moreover, in a way, although Rule 6 requires a showing of excusable *neglect*, many of plaintiff's counsel's asserted reasons are not neglect. They are intentional decisions. Indeed, plaintiff's counsel asserted that he thought it was more appropriate to wait until he possessed the reports before he sought the extension. Dkt. 257 at p. 13. Additionally, if plaintiff's counsel believed he was terminated, then he should have moved to withdraw.[6] But again, he chose not to do so. These are not negligent acts. Instead, they are just bad, affirmative decisions.

For these reasons, if the Court were to apply Rule 6, plaintiff's Motion to Extend would be denied, and defendant's Motion to Bar would be granted. However, the Court does not believe Rule 6 applies under the circumstances presented here.[7]

Rule 6 is a rule of general applicability; it is a gap filler that allows for extensions when other more specific rules do not apply. When more than one Federal Rule of Civil Procedure could apply to a circumstance, federal courts should apply the specific provision over the general provision. *See, e.g., Societe Internationale v. Rogers*, 357 U.S. 197, 206-07 (1958) (applying Rule 37 over Rule 41 with regard to discovery sanctions); *Lucien v. Breweur*, 9 F.3d 26, 28 (7th Cir. 1993) ("[W]e think the specific provision . . . should govern, rather than the general one."); *Neighbors Law Firm, P.C. v. Highland Capital Management, L.P.*, 2011 U.S. Dist. LEXIS 6195, at *4 (E.D.N.C. Jan. 24, 2011) (specific provision under Rule 16(b)(4) to modify a scheduling order takes precedence over Rule 6's generally applicable extension provisions); *Pritchard v. Dow Agro Sciences*, 255 F.R.D. 164, 171-72 (W.D.

---

[6] The Court does not contest that plaintiff may be a difficult client, as evidenced by the withdrawal of her previous counsel and her demeanor when she appeared in court.

[7] The Seventh Circuit's recent decision in *Flint v. City of Belvidere*, 2015 U.S. App. LEXIS 11194, at *7-8 (7th Cir. 2015) is distinguishable. Although the Seventh Circuit cited to and relied on Rule 6, the parties did not brief and the Seventh Circuit did not address whether Rule 6 or Rule 16 applied. As the issue was not addressed, the *Flint* court's reliance on Rule 6 is not controlling. *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952). Moreover, the *Flint* court was not addressing a failure to timely disclose expert witnesses, which is specifically discussed in Rule 26 and Rule 37.

Pa. 2009) (Rule 36's extension provisions for requests to admit apply rather than Rule 6's general provision); *Finwall v. City of Chicago*, 239 F.R.D. 494, 501 n.5 (N.D. Ill. 2006) ("Here, there is a precise standard woven into Rule 37(c)(1) which would trump Rule 6."). In this case, the Court entered a specific scheduling order by which plaintiff was to provide her retained expert reports. Accordingly, the more specific rule – either Rule 16(b)(4) or even Rule 37(c)(1) – would be the appropriate, applicable rule.[8]

### Federal Rule of Civil Procedure 16

Rule 16(b)(3)(A) grants this Court the power to set discovery deadlines. In certain cases (including cases like this), a court is *required* to issue a scheduling order. Fed. R. Civ. P. 16(b)(1) (district judge or magistrate judge "must issue a scheduling order"). The scheduling order is required to address the time to (a) join other parties, (b) amend the pleadings, (c) complete discovery and (d) file motions. Fed. R. Civ. P. 16(b)(3)(A). But the court can include other deadlines, including the time to (a) make disclosures under Rule 26(a), (b) supplement discovery responses and (c) "other appropriate matters." Fed. R. Civ. P. 16(b)(3)(B).

Once the district court has entered a scheduling order, Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." The proper method to seek an extension of discovery deadlines is to file a motion under Rule 16(b)(4) *before* the deadline has passed. *See Naud v. City of Rockford*, No. 09 CV 50074, 2013 WL 4447028, at *5 (N.D. Ill. Aug. 16, 2013).

---

[8] The Court recognizes that courts are split on the issue of whether Rule 6 or Rule 16 applies when a movant seeks to modify a scheduling order. Numerous cases hold that Rule 16(b)(4) applies, in part, because it is the more specific rule. *Barker v. Goorich*, 2012 U.S. Dist. LEXIS 5810, at *7 (S.D. Ohio Jan. 13, 2011) ("Defendant's arguments appear not to recognize the significance of the fact that the deadline which they are seeking to extend was established in a pretrial order issued under Rule 16, and that the Rule 16(b) standard – not the excusable neglect standard set out in Rule 6(b) – applies."); *Carpenter v. Churchville Greene Homeowner's Ass'n*, 2011 U.S. Dist. LEXIS 115948, at *10-11 (W.D.N.Y. Sept. 29, 2011); *Richardson v. United States*, 2010 U.S. Dist. LEXIS 104443, at *10 (E.D.N.C. Sept. 30, 2010); *Sorrels v. MBNA America Bank, N.A.*, 2004 U.S. Dist. LEXIS 18857, at *3 (D. Alaska Jan. 23, 2004). However, other cases hold that Rule 6(b)(1)(B) applies, in part, because, according to these cases, it is the more specific rule. *Johnson v. Murphy*, 2011 U.S. Dist. LEXIS 80513, at *11-12 n. 3 (D.S.C. July 22, 2011); *Anderson v. Caldwell County Sheriff's Office*, 2011 U.S. Dist. LEXIS 7768, at *3 (W.D.N.C. Jan. 20, 2011) ("While the court agrees that it can enlarge time contained in a pretrial order for good cause as provided by Rule 16, the more specific requirements of Rule 6(b)(1)(B) apply where, as here, the deadline has already run."). The Court believes that applying Rule 16(b)(4)'s "good cause" standard is the better approach. However, as shown by this Court's analysis, regardless of whether Rule 6 or Rule 16 applies, plaintiff has failed under both standards.

As mentioned previously, under Rule 6(b)(1), as interpreted by case law, the term "good cause" imposes a light burden. 1 *Moore's Federal Practice* §6.06[2] p. 6-32 (Matthew Bender 3d ed. 2013); Wright, Miller & Steinman, 4B *Federal Practice and Procedure: Civil* §1165, p. 602-08 (4th ed. 2013). In contrast, when used in Rule 16(b)(4), case law establishes that the term "good cause" imposes a much heavier burden. In fact, Rule 16(b)(4)'s "good cause" requirement, which focuses on diligence, is more onerous than Rule 6(b)(1)(B)'s "excusable neglect" requirement. *Auto-Owners Ins. Co. v. Ace Electrical Service, Inc.*, 648 F. Supp. 2d 1371, 1375 (M.D. Fla. 2009) ("Rule 16 provides a more stringent standard than Rule 6's excusable neglect standard."); *see Carpenter*, 2011 U.S. Dist. LEXIS 115948, at *11 (citing *Grecco Photography, Inc. v. Everett Collection, Inc.*, 2008 U.S. Dist. LEXIS 82426, at *2 (S.D.N.Y. Oct. 15, 2008) ("'[g]ood cause' requires a greater showing than 'excusable neglect'")); *see also In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996) (Rule 4(m)'s "'[good cause]' requires a greater showing than 'excusable neglect'").[9]

In the Seventh Circuit, the court's primary inquiry is the diligence of the party seeking the extension. *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). The Seventh Circuit has not addressed whether prejudice to a non-movant is

---

[9] The Court is aware that, yet again, there is a case-law split as to which standard is more stringent. In contrast to the cases cited above, other cases state that Rule 6's "excusable neglect" standard is more onerous. *Dryden v. City of Hays*, 2012 U.S. Dist. LEXIS 100790, at *7 (D. Kan. July 20, 2012); *Richardson*, 2010 U.S. Dist. LEXIS 104443, at *13 (Rule 6 is more rigorous standard). In other contexts involving other rules, "excusable neglect" is often considered to be a higher standard than "good cause." *See, e.g., Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 (11th Cir. 2014) (Rule 55); *Colleton Prepatory Academy, Inc. v. Hoover Universal*, 616 F.3d 413, 420 (4th Cir. 2010) (Rule 60); *Bailey v. Carter*, 2000 U.S. App. LEXIS 18082, at *5 (7th Cir. 2000) (Federal Rule of Appellate Procedure 4(a)(5)(A)). Some courts believe that the distinction is difficult to even discern. *Birch v. Polaris Indus. Inc.*, 2015 U.S. Dist. LEXIS 35357, at *10 n.3 (D. Utah Mar. 19, 2015); *Peche v. Keller*, 2012 U.S. Dist. LEXIS 80865, at *17 (M.D.N.C. June 12, 2012). Other courts just gloss over the issue and find that the standards are essentially the same. *See, e.g. AZ DNR, Inc., LLC v. Luxury Travel Brokers, Inc.*, 2014 U.S. Dist. LEXIS 154881, at *10 n.25 (D. Kan. Sept. 3, 2014). Without doubt, "excusable neglect" under Rule 6(b)(1)(B) is a more stringent standard than "good cause" under Rule 6(b)(1). *Abraham v. WPX Energy Prod., LLC*, 2013 U.S. Dist. LEXIS 156743, at *16 (D.N.M. Oct. 21, 2013). The Court believes that Rule 16(b)(4)'s good cause standard is more onerous – at least in the Seventh Circuit because the focus is solely on diligence. The Court also believes that an important distinction exists between "excusable neglect" under Rule 6 and "good cause" under Rule 16(b)(4). This distinction can be case dispositive – again, at least in the Seventh Circuit. As discussed later, "good cause" under Rule 16(b)(4) looks to the movant's diligence. But "excusable neglect" includes other factors, including the prejudice to the non-movant, which provide an escape hatch for the movant. A movant could dawdle during discovery (evidencing a lack of diligence) but that slothfulness may not harm the non-movant (lack of prejudice). As a result, in this Court's view, although Rule 6's "excusable neglect" standard incorporates more factors, those factors give the movant more wiggle room to obtain relief from deadlines.

a proper consideration under Rule 16(b)(4)'s "good cause" standard. Most other circuits agree with the Seventh Circuit. These circuits likewise focus on the movant's diligence. *See, e.g., Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3rd Cir. 2010) ("Rule 16(b)(4) focuses on the moving party's burden to show due diligence."); *Steir v. Girl Scouts of the USA,* 383 F.3d 7, 12 (1st Cir. 2004) (focus on diligence of movant rather than prejudice to non-movant); *Parker v. Columbia Pictures, Indus.*, 204 F.3d 326, 339-40 (2nd Cir. 2000); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end."). Although some circuits also consider the prejudice to the non-moving party, that consideration is secondary. *See, e.g., Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (only if movant meets diligence standard does court consider prejudice to non-movant); *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (primary focus is diligence but prejudice to non-movant is a "relevant consideration"). The movant bears the burden to establish its diligence. *Trustmark Ins. Co. v. Gen. & Cologne Life*, 424 F.3d 542, 553 (7th Cir. 2005); *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 118 (W.D. Pa. 2010) ("Rule 16(b)(4) requires that the moving party demonstrate 'good cause' prior to the Court amending its scheduling order. . ."); *see also 360 Mortgage Group, LLC v. Stonegate Mortgage Corp.*, 2015 U.S. Dist. LEXIS 65956, at *6 (E.D.N.C. May 20, 2015); *Mt. Mktg. Group, LLC v. Heimerl & Lammers*, 2015 U.S. Dist. LEXIS 56056, at *6 (D. Minn. Apr. 29, 2015); *Grasso v. Consolidated Rail Corp.*, 2013 U.S. Dist. LEXIS 86738, at *9 (D.N.J. June 20, 2013).

If the Court were to apply Rule 16(b)(4), plaintiff would not prevail. She has not shown diligence and, thereby, has not established diligence.

To begin, plaintiff's counsel voiced no concern on September 9, 2014, when the Court set the October 14, 2014, deadline. In fact, plaintiff's counsel implied that the deadline would be met without much difficulty. Diligent counsel would have known of possible problems at that time; and if problems existed, diligent counsel would have brought those problems to the attention of the Court before the expiration of the deadline. Sometime between September 9 and October 14, 2014, plaintiff's counsel realized he would be unable to meet the October 14, 2014, deadline to disclose expert witnesses. But he waited until more than a week *later* to raise the issue with defense counsel. After they rejected his requests to seek an agreed extension, plaintiff's counsel then did nothing to alert the Court until nearly a week *after* defendants' Motion to Bar – filed months later. A party cannot establish diligence where that party has failed to timely alert the Court when it knows it will be unable to meet the deadline. *See Tetzlaff v. Educ. Credit Mgt. Corp.*, 521 B.R. 875, 8790 (E.D. Wisc. 2014). Counsel's excuses for not timely disclosing experts – lack of funds and poor communications with his clients – did not prohibit him from seeking an extension before the deadline had already passed and, in fact, should have been the basis for such a motion. Plaintiff's lack of

diligence continued when counsel did not attend the presentment of the Motion to Bar on January 27, 2015, or in any other way apprise the Court of any argument against the motion.

Moreover, a party cannot establish diligence based solely on its conduct *after* being alerted that it missed a deadline. *See Beauchamp v. City of Dixon*, No. 11 CV 50121, 2014 WL 901437, at *3 (N.D. Ill. Mar. 7, 2014) ("a party cannot establish diligence based solely on its conduct after being alerted to its failure to meet a court deadline."). Although counsel describes efforts to procure experts before and in the months following the disclosure deadline, such as engaging search firms, seeking loans, and hiring three of the experts, he has presented no evidence in the form of documents or affidavits to support those assertions. And his own exhibits demonstrate that the earliest any expert began working was on January 21, 2015, when Dr. Gourang Patel billed for 2.5 hours of research on the day before defense counsel filed the Motion to Bar. Dkt. 257 Ex. 4 at 7. The only other invoice submitted shows that Dr. Vinaya Puppala started working March 7, 2015. Dkt. 257 Ex. B at 7. Furthermore, plaintiff counsel's frenetic efforts following the Motion to Bar are inconsistent with counsel's representations to the Court when it set the deadlines. In addition, the Motion to Extend demonstrates the lack of diligence in its preparation. As Judge Kapala noted, the motion made no effort to explain the 90-day delay in seeking an extension, counsel's failure to attend the January 27, 2015, hearing, or to set out any discussion of the pertinent legal requirements to modify a scheduling order. Dkt. 253, p. 2.

The Court does not address prejudice under Rule 16(b)(4) for at least two reasons. First, the Seventh Circuit has never held that prejudice is a proper consideration under this rule. Second, even in those circuits where prejudice can be considered, it is a secondary issue. Even if this Court were to consider prejudice, as shown throughout this order, the Court would find that defendants suffered at least some prejudice based on plaintiff's lack of diligence.

For these reasons, if the Court were to apply Rule 16(b)(4), plaintiff's Motion to Extend would be denied, and defendants' Motion to Bar would be granted. However, the Court does not believe that Rule 16(b)(4) applies under the circumstances here; namely, the failure to disclose a retained expert witness under Rule 26(a).

The Court chooses to rely on Rule 37(c) for four reasons. First, the text of Rules 26 and 37 suggest that Rule 37 is the more applicable rule. Rule 26(a)(2)(D) provides the time for disclosing retained expert opinions: "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Building upon Rule 26(a)(2)(D), Rule 37(c)(1) states that if a party fails to identify a witness as required by Rule 26(a) – which is what happened here – the party cannot use the witness, absent substantial justification or lack of harm. Fed.

R. Civ. P. 37(c)(1). Second, Rule 37 is the more specific provision. Rule 37(c)(1) specifically addresses the failure to identify a witness as required by Rule 26(a), precisely the issue here. Fed. R. Civ. P. 37(c)(1). Third, case law supports reliance on Rule 37(c) as the basis for the sanctions. These cases often cite to, and to some extent rely upon Rule 16, but their primary focus and ultimate rationale is Rule 37. *See, e.g., Wong v. Regents of the University of California*, 410 F.3d 1052, 1062 (9th Cir. 2005); *Schardine v. Fleming*, 2014 U.S. Dist. LEXIS 88046, at \*5-8 (D. Mon. June 26, 2014) (relying on *Wong*); *Ratcliff v. City of Red Lodge*, 2013 U.S. Dist. LEXIS 155021, at \*7-9 (D. Mon. Oct. 29, 2013) (relying on *Wong*); *see also Firefighters' Institute for Racial Equality v. City of St. Louis*, 220 F.3d 898, 902 (8th Cir. 2000); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008-09 (8th Cir. 1998). Fourth, no case law exclusively relies on Rule 16's "good cause" standard under these circumstances. Defendants did not cite to any case involving the failure to timely disclose an expert witness that relied exclusively on Rule 16, and the Court was unable to locate any case. *See Carrillo v. Schneider Logistics Inc.*, 2013 U.S. Dist. LEXIS 173178, at \*26 n.1 (C.D. Cal. Dec. 6, 2013) (explicitly refusing to rely upon Rule 16(b)(4) and instead relying upon Rule 26(a) and Rule 37(c)(1)).

Federal Rule of Civil Procedure 37

Under Federal Rule of Civil Procedure 37(c), if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). The party seeking relief from Rule 37(c)'s presumed preclusion bears the burden of establishing that the failure was substantially justified or harmless. *Finwall v. Chicago*, 239 F.R.D. 494, 503 (N.D. Ill. 2006).

The determination whether a Rule 26(a) violation is justified or harmless is left to the discretion of the district court. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). That another court faced with the same facts might have selected a lesser or greater sanction does not mean that the sanctioning court abused its discretion. *Harriman v. Hancock County*, 627 F.3d 22, 32 (1st Cir. 2010). The Seventh Circuit has identified the following relevant factors to use when evaluating whether a failure to disclose was substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012).[10]

---

[10] The Court notes that Rule 37(c) speaks of "harmless," whereas the factors discuss "prejudice." But "harmless" and "prejudice" are just two different sides of the same coin. These concepts are the same, just viewed from a different perspective. *Cf. U.S. v. Olano*, 507 U.S. 725, 734-35 (1993) (holding that under plain error review, the question of prejudice is the same as the harmless error analysis); *Byrd v. Workman*, 645 F.3d 1159,

There is no doubt that the Seventh Circuit has repeatedly articulated these factors for determining whether to bar evidence under Rule 37(c). *See, e.g., David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *Keach v. U.S. Trust Co.*, 419 F.3d 626, 640 (7th Cir. 2005). And, not surprisingly, the district courts have applied these factors. *See, e.g., Patel v. Menard, Inc.*, 2011 U.S. Dist. LEXIS 100826, at *6 (S.D. Ind. Sept. 7, 2011); *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 934-35 (N.D. Ill. 2008). But this Court notes that these factors focus on the harmless/prejudice component of Rule 37(c), not the "substantially justified" component. Perhaps these factors have simply developed because movant's more often assert a lack of harm rather than substantial justification.

In this case, plaintiff's counsel has not established that his failure was substantially justified. Counsel offers a blunderbuss of reasons why his failure was substantially justified: plaintiff's mental state; the lack of funds to hire experts; and plaintiff counsel's busyness, purported illness and belief that he might have been terminated. In the context of this case, these reasons do not establish substantial justification. Initially, as noted repeatedly throughout this order, plaintiff's counsel failed to mention any of these issues to the Court either when it set the schedule or at any time before the deadlines expired. Indeed, plaintiff's counsel represented to the Court that the experts would be disclosed in a timely manner, and he recognized that the Court stated it was not inclined to extend the dates. When the Court set the schedule, counsel knew of plaintiff's mental state, his own workload and the availability of funds (or lack thereof). Furthermore, context matters in at least two ways. First, plaintiff did not miss the deadline by a few days or weeks; plaintiff missed the deadline by months. And during those two months, plaintiff never once informed the Court of these issues. It appears that plaintiff knew that the deadline would be missed before it expired. However, plaintiff failed to file a motion before the deadline, contrary to this Court's standing orders requiring motions for extensions to be filed before the expiration of a deadline. Second, throughout the course of the litigation, plaintiff has been less than diligent, and has failed to meet other deadlines and comply with other court orders.

Turning to the harmless/prejudice component of Rule 37(c), the Court finds some prejudice to not only defendants, but also to the Court and the other litigants who have had their cases delayed because of plaintiff's failure to meet deadlines. The Court addresses the four factors identified by the Seventh Circuit in turn, and then addresses the sanction of preclusion when it may be case dispositive.

Prejudice or Surprise to the Non-moving Party

---

1167 n. 9 (10th Cir. 2011) ("*Strickland* prejudice and *Brecht* harmless error are essentially the same standard.").

Defendants contend that they will be prejudiced if plaintiff is allowed to use her expert witnesses because (1) the time to file dispositive motions will be delayed even further, and (2) they will now be forced to depose plaintiff's experts and obtain their own when "[h]ad Plaintiff complied with the Court's schedule, such costs would have been avoided." Dkt. 256. As noted above, the Court delayed summary judgment briefing that defendants sought to accommodate plaintiff's plan to disclose experts. Because of plaintiff's failure, the dispositive motion date will be further delayed.

As for defendants' argument that they will also be prejudiced by the need to evaluate plaintiff's experts and hire their own, that argument is not overly persuasive. Plaintiff made no secret of her intent to hire expert witnesses as evidenced by the fact that the Court delayed dispositive motions and instead set a schedule for expert discovery, including the disclosure and deposition of both plaintiffs' and defendants' experts. Had plaintiff timely disclosed her experts, defendants would still have faced the decision whether to depose those experts and obtain their own. Defendants note that in *Yeoman v. Ikea USA West, Inc.*, No. 11 CV 701, 2013 WL 3467410 (S.D. Cal. July 10, 2013), the court barred expert witnesses because it would force the defendants to review the plaintiff's expert reports, depose the expert, and obtain their own experts. *Id.* at *5. But *Yeoman* is distinguishable because in that case, the plaintiff's desire for more experts came as a surprise six months after the expert disclosure deadline. *Id.*. Here, as mentioned above, defendants have long known that plaintiff intended to disclose numerous expert witnesses.

The Ability of the Party to Cure the Prejudice

The Court must consider plaintiff's ability to cure the prejudice faced by defendants. As noted above, the Seventh Circuit urges district courts to consider alternate sanctions under Rule 37(c), such as a monetary sanction when exclusion could be outcome determinative. *Musser v. Gentiv Health Servs.*, 356 F.3d 751, 760 (7th Cir. 2004); *Beauchamp*, 2014 WL 901437, at *7-8 (awarding fees and costs rather than excluding expert witnesses). In addition to the delay in filing dispositive motions, defendants argue they were also prejudiced by the expenses necessitated by briefing and appearing in court on defendants' Motion to Bar and plaintiff's Motion to Extend (as the Court explained above, defendants faced the costs to review the plaintiff's expert reports, depose the experts, and to obtain their own even if plaintiff timely disclosed her experts, and therefore are not within the prejudices suffered). Plaintiff's counsel argues that because exclusion would be outcome determinative, the appropriate sanction "would be to allow the case to be decided on its merits and to order Plaintiff to pay reasonable expenses and attorney's fees to Defense counsel for the time it took to prepare the motion and the time it took to appear in Court." Dkt. 257, p. 15. Defendants do not address the Court's need to consider sanctions short of exclusion, and therefore offer no

argument that an award of costs and fees would be an inadequate sanction or fall short of curing their prejudice.

## Likelihood of Disruption of the Trial

Plaintiff musters up much temerity with regard to the disruption of the trial factor. Plaintiff argues "the trial date of this case will not be disrupted because no trial date nor summary judgement motion dates have been set and Defendants will have all the time that they seek to prepare their defense and against Plaintiff's expert witnesses." Dkt. 257, p. 11. It is technically true that no trial date and no summary judgment date have been established. But what plaintiff fails to recognize is that no trial date and dispositive motion date have been set *because plaintiff has failed to meet the Court's deadlines*. It is common knowledge, a matter of local rule and established practice that in the Western Division of the Northern District of Illinois the magistrate judge handles all pretrial matters and that upon completion of discovery and the final pretrial conference, the case is transferred to the district judge who sets a trial date. Thus, the trial date is contingent upon meeting the discovery dates established by the magistrate judge. Similarly, the summary judgment date is likewise contingent on the parties meeting the discovery cut-off dates. Meeting discovery dates is a necessary precondition to setting a trial date. Moreover, asserting that defendants will have all the time they need is very presumptuous, particularly coming from a litigant with a habit of failing to meet deadlines. Further, the lack of a trial date is not a good reason for failing to comply with court ordered deadlines. *Hard Surface Solutions, Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010) ("It is no answer to say the trial date has not been set."). This factor weighs against plaintiff.

## Bad Faith or Willfulness in Failing to Meet Deadline

As discussed earlier, the Court has no basis for concluding that plaintiff purposefully withheld disclosing experts to disrupt the case. However, plaintiff's counsel did not advise the Court when he first learned he could not timely disclose plaintiff's experts or their reports and, rather, waited months until defendants raised the issue. Moreover, the Court relies on counsel to be forthright when it schedules deadlines. When this Court set the October 14, 2014 date to disclose experts, plaintiff's counsel indicated that the deadline would be met and that the experts would be "ready to go." Those representations are difficult to square with the representations now presented to the Court for missing the deadline by months. Accordingly, the Court's evaluation of the good faith factor weighs in favor of barring plaintiff's use of the expert witnesses.

## Dispositive Nature of Preclusion Order

In exercising its extraordinary discretion to impose sanctions, courts must adhere to the doctrine of proportionality, and sound legal principles. *Cleversafe, Inc. v. Amplidata, Inc.*, 2014 U.S. Dist. LEXIS 79278, at \*6 (N.D. Ill. June 11, 2014); *New Medium Technologies LLC v. Barco N.V.*, 242 F.R.D. 460, 463 (N.D. Ill. 2007). Moreover, the Court must also be mindful that justice is best served by resolving cases on their merits. *Musser*, 356 F.3d at 759.

Accordingly, the Seventh Circuit case law has added another factor for courts to consider if a preclusion order would essentially be outcome determinative. When barring a witness would deny a party the ability to prove its case, the sanction "must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Sherrod v. Lingle*, 223 F.3d 605, 612 (7th Cir. 2000) (quoting *Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998)). Therefore, the Seventh Circuit urges courts to consider "the alternate sanctions available [under Rule 37(c)] when imposing exclusionary sanctions that are outcome determinative." *Musser*, 356 F.3d at 760.

Plaintiff contends that if this Court were to preclude the experts, he would not be able to prevail, arguing that a preclusion order would be tantamount to a dismissal order. Dkt. 257, p. 11. Cases involving deliberate indifference, particularly against medical professionals, often – but not always – require expert testimony. Here, defendant Dr. Cullinan seems to recognize that without expert testimony, plaintiff's claim against him would be doomed. Dkt. 255, p. 10. One of plaintiff's late identified experts opines against defendant Mongan, a nurse. Dkt. 257, Ex. E. Without that opinion, summary judgment in favor of defendant Mongan seems likely. Although an expert opinion is not as critical to the remaining defendants (Ogle County, Wendy Kerwin, and Gregory A. Beitel), plaintiff's claim against these defendants is substantially less likely to survive summary judgment.

After carefully balancing the factors relevant to whether the failure to timely disclose experts was substantially justified or harmless, including the preference for sanctions proportionate to the harm and for deciding cases on the merits, and in an exercise of discretion, the Court reluctantly will not preclude plaintiff's use of the identified experts. Instead, this Court finds that in this case, an award of fees and costs would be the more appropriate sanction for plaintiff's discovery violation.

The Court pauses to acknowledge three matters. First, the Court recognizes that its recommendation has changed from the sanction of exclusion originally proposed to the district court. *See* Dkt. 241. However, the original recommendation was made after plaintiff's counsel failed to appear to express any opposition to defendants' Motion to Bar and in the absence of any report when or if expert reports would be filed or even whether plaintiff still intended to proceed with expert witnesses. In light of Judge Kapala's recommittal of the original Report and Recommendation, the Court makes this revised recommendation with the benefit of

plaintiff's views and after counsel has now attached the expert reports to the supplemental brief. Second, the Seventh Circuit's added consideration that courts be especially cautious when precluding expert witnesses causes odd results and perverse incentives. By considering this factor, courts are more likely to forgive parties and attorneys who commit extreme blunders compared to other litigants who commit less egregious errors.[11] Third, relying upon Rule 37 – rather than Rule 16(b)(4) – runs contrary to the host of case law stating the importance of scheduling orders and meeting the dates contained in those orders. But this Court is not at liberty to re-write the Federal Rules of Civil Procedure.

Accordingly, it is this Court's Report and Recommendation that the district court enter the following: (1) plaintiff may proceed with the expert witnesses whose reports are attached to plaintiff's supplemental brief, Dkt. 257; (2) plaintiff is restricted to the reports previously served and the Court expresses no opinion as to whether the reports satisfy the requirements of Rule 26(a)(2)(B); (3) plaintiff must make her experts available to be deposed by defendants no later than August 26, 2015; (4) all of this is conditioned on plaintiff paying the fees and costs incurred by all defense counsel in doing the following: (a) filing, briefing, and appearing in court on defendants' Motion to Bar; (b) briefing and appearing in court on plaintiff's Motion to Extend; and (c) briefing the supplemental briefs filed after the district court recommitted the Report and Recommendation to this Court. Failure to pay by August 19, 2015, risks establishing that an award of fees and costs is an inadequate sanction. By July 29, 2015, defendants shall provide to plaintiff's counsel the billing records for the costs and fees they seek. Counsel are strongly urged to work together to resolve any disputes over fees. If disputes cannot be resolved, by August 7, 2015, the parties shall file a joint statement identifying only those portions of the requests for fees and costs that cannot be resolved and detailing each party's position supported by citations to authority.

**Motion for Voluntary Dismissal**

Also before the Court is plaintiff's Motion for Voluntary Dismissal. Dkt. 236. The Court heard argument on the motion during its presentment on February 12, 2015, and the only dispute is over whether the dismissal is without or with prejudice. The Court proposed that the dismissal be without prejudice conditioned on plaintiff's payment of fees and costs those defendants incurred here if plaintiff

---

[11] *See Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 86 (1st Cir. 2009) (Woodcock, J., dissenting) ("Ironically, under the majority's formulation, the sanction of exclusion will end up being applied only when it does not really matter and not imposed when it does. It would seem the obverse should be the case: If the witness is critical, the proponent has a compelling incentive to comply with the deadlines precisely because the exclusion will mean more."). This Court is not at liberty to disregard the Seventh Circuit's admonition to consider a lesser sanction when preclusion would be case determinative, but tends to agree with Judge Woodcock.

refiles elsewhere. Defense counsel responded "[t]hat would probably be acceptable to us," and plaintiff's counsel responded, "I would concur." Accordingly, it is this Court's further Report and Recommendation that the claims against the Healthcare Defendants be dismissed without prejudice on the condition that plaintiff pay those defendants' reasonable fees and costs incurred in defending this action if the claims against them are refiled, and that defendants may petition the Court to enforce this order. Plaintiff must file an objection to this condition with the Court by July 29, 2015 if it rejects this condition. If plaintiff fails to file an objection to this condition by that date, the Court will assume that plaintiff has no objection and the claims against the Healthcare Defendants will be dismissed without prejudice.

### Motion for Summary Judgment

On May 5, 2015, the Healthcare Defendants filed the gratuitous Summary Judgment Motion, while this Court was still determining the other motions. Dkt. 261. The filing of the Summary Judgment Motion was bizarre. The Court is baffled why the Summary Judgment Motion was filed. The Court had not yet established dispositive motion dates, plaintiff had already filed her Motion for Voluntary Dismissal, and during the February 12, 2015, argument plaintiff essentially agreed to pay their fees and costs if she re-filed the claims against them. The Summary Judgment Motion was unnecessary, and only served to complicate this case and add to the Court's work load. The Court recommends that the Summary Judgment Motion be denied without prejudice. The Court will also not require plaintiff to pay any fees the Healthcare Defendants incurred in filing this motion.

### CONCLUSION

The Motion to Extend and the Motion to Bar are both granted, in part, and denied, in part. Plaintiff is not barred from using the identified expert witnesses. However, plaintiff may only use those expert witnesses if he pays the fees and costs identified in this order.

It is the Court's Report and Recommendation that the Motion for Voluntary Dismissal be granted. The dismissal is without prejudice, but conditioned upon plaintiff's payment of all fees and costs incurred as of February 10, 2015, in defending this case, if plaintiff refiles against any of the Healthcare Defendants. Plaintiff is given until July 29, 2015, to accept this condition. If plaintiff fails to object to this condition, then the Court will assume that plaintiff accepts this condition under Rule 41.

It is the Court's Report and Recommendation that the Summary Judgment Motion be denied as moot.

All objections to any aspect of this order must be filed by July 29, 2015. The case is set for telephonic status on August 4, 2015 at 9:00 a.m. By July 31, 2015, counsel shall provide telephone numbers for the status hearing to the Court's operations specialist, who will initiate the call.

Date: July 14, 2015

By: _____
Iain D. Johnston
United States Magistrate Judge